**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

LAMONT CLAYTON VAN                                                    PLAINTIFF
ADC #108062

V.                                   5:05CV00229 SWW/HDY

LARRY NORRIS *et al.*                                                 DEFENDANTS

## FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Susan W. Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.
2.    Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

1

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite 402
> Little Rock, AR 72201-3325

## **DISPOSITION**

Plaintiff, an inmate at the Varner Super Max Unit of the Arkansas Department of Correction ("ADC"), filed a *pro se* complaint (docket entry #2), pursuant to 42 U.S.C. § 1983, on August 8, 2005. Plaintiff also made a timely demand for a jury trial; however, before incurring the expense of money and manpower inherent in such a trial, the Court held a pre-jury evidentiary hearing on November 28, 2006, to determine whether the case should proceed to a jury trial. Pursuant to the standard set forth in *Johnson v. Bi-State Justice Center*, 12 F.3d 133 (8th Cir. 1993), the Court has considered Plaintiff's testimony during the hearing to be true, drawn all appropriate inferences in Plaintiff's favor, and refrained from making any credibility determinations. *Id*. at 135-6. Viewing the evidence presented during the hearing in this light, the Court must now decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id., quoting Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-252 (1986). Considering the evidence introduced at the evidentiary hearing in

the manner set forth above, the undersigned makes the following findings:

1.      The events giving rise to this claim occurred while Plaintiff was housed at the Tucker Maximum Security Unit ("Tucker").  Plaintiff was incarcerated at Tucker from May of 2000 until about three weeks ago, when he was transferred to the Varner Super Max Unit.

2.      Plaintiff's complaint alleges that Defendants denied him adequate treatment for a hernia and a retina condition.  The statute of limitations for § 1983 actions in Arkansas is three years. *Morton v. City of Little Rock*, 934 F.2d 180, 182 (8th Cir. 1991).  Plaintiff filed this case on August 8, 2005, making the relevant time period for consideration from August 8, 2002, to the current date..

3.      There are four Defendants: Dr. Ashraf Diab, a Correctional Medical Services ("CMS") physician; Juanita Stell, a CMS licensed practical nurse at Tucker; Charlotte Green, CMS infirmary manager at Tucker; and Dr. Roland Anderson, CMS medical director in Arkansas.

4.      Plaintiff's hernia was a problem before he even entered the ADC, and he was told by his son's physician that the hernia needed to be repaired.  When Plaintiff first entered the ADC he was diagnosed with the hernia, and as early as May 28, 1998, RNP Brenda Flowers recommended that he have a consult to evaluate him for surgical treatment of the hernia.  At that time, he was evaluated by Dr. M. Young, who wrote that he would see Plaintiff at his next sick call, if the hernia still hurt (Plaintiff's exhibit #3).  What happened next is unclear, but Plaintiff did not have surgery at that time.  On September 10, 1999, Plaintiff filed a grievance asserting that his hernia was causing pain, and he wanted to be medically reclassified to avoid field assignment (docket entry #53, exhibit B).  That grievance was denied by LPN D. Williams, who noted on September 28, 1999, that Plaintiff should take his medication as ordered, and that no reclassification was needed at that time.  On June 18, 2000, Plaintiff filed another grievance, alleging that his hernia was causing him pain (docket entry #53, exhibit A).  That grievance was denied by Speer on July 12, 2000.

5.       In his testimony, Plaintiff referenced a number of grievances he has filed relating to his complaints, and specifically asked the Court to consider those grievances.

6.       More recently, and within the time period under consideration, Plaintiff filed an informal resolution, which became grievance number MX-05-81, on January 3, 2005, complaining that his hernia was causing him pain, and he had been unable to see a physician, despite being scheduled for a visit five days earlier (docket entry #20). The response indicated that the doctor was to return on January 10, 2005, and that Plaintiff was one of his priorities. When Plaintiff was seen, he was seen by Diab, who did not refer him for treatment. Defendant Stell provided the response from CMS on February 11, 2005, and indicated that Plaintiff had been seen in December of 2004, and in January and February of 2005, to monitor his condition.

7.       On January 11, 2005, Plaintiff began the process for grievance MX-05-127 (docket entry #20). In that grievance, Plaintiff alleged that he told Diab of the pain he was in, but was told by Diab that nothing could be done because CMS medical staff doesn't do surgery on hernias. The February 11, 2005, response to that grievance, from Stell, indicates that Plaintiff was being monitored, had seen three doctors, and that there had been no recommendation for surgery.

8.       On April 13, 2005, Plaintiff initiated proceedings for grievance MX-05-749 (docket entry #20), complaining that his hernia pain was being ignored. According to Plaintiff's grievance, Green was informed by officers that Plaintiff was having pain on March 31, 2005, but Green refused to see him until the next day. The grievance response indicates that Green believed Plaintiff's walking to the infirmary would make matters worse, when he already had stronger pain medication than they could give him without a medical provider on site. Plaintiff was apparently seen by a medical provider the next day, which led to him having hernia surgery on April 26, 2005, as set forth

in RN Sally Watson's May 6, 2005, response.[1]  According to Plaintiff's testimony, the timing of

Plaintiff's surgery did not have any negative effect on his surgical outcome.

9.      Plaintiff also claims that he was denied tinted glasses, despite being prescribed

vitamins and dark tinted glasses by Simmons on December 13, 2004.  In his testimony regarding his

vision complaints, Plaintiff referenced grievance MX-05-80, which began with his informal

resolution filed on December 30, 2004 (docket entry #2, exhibit #2).  In that grievance, Plaintiff

complained that Diab refused to send him to the eye doctor.  That grievance also indicates that

Plaintiff was prescribed vitamins, but did not receive dark tinted glasses, allegedly because of Green.

Stell's February 11, 2005, response indicates that Plaintiff was given vitamins.  At the hearing,

Defendants submitted a consultation report from Dr. Simmons, which indicates that he suggested

tinted glasses for Plaintiff's condition.  That block of the report indicates that the consultant's

suggestions are to be "Reviewed by CMS Medical Director."  However, the unit's CMS physician,

Dr. Ifediora, left the "recommendation" section of the report blank, so no tinted glasses were

provided (Defendants' exhibit #1).  In August of 2005, Dr. Simmons saw Plaintiff again, but did not

recommend tinted glasses (Defendants' exhibit #2).  At that time, the unit physician, Dr. Larry

Bowler, ordered prescription eyewear as indicated.  Plaintiff testified that he is currently prescribed

regular eyeglasses, but does not wear them.  It does not appear that any individual named as a

Defendant in this lawsuit had any role in a denial of Plaintiff's tinted glasses.[2]  Additionally,

---

[1]An earlier grievance, MX-050661, filed March 30, 2005, complaining of Green's treatment, was initially not responded to because, according to Stell's response, CMS officials did not receive the informal complaint on the issue.  Stell's April 25, 2006, response indicates that Plaintiff had a consult pending, and that they were waiting on a response from Anderson.

[2]In grievance MX-05-80, Plaintiff did allege that Green refused to give him tinted glasses, but at the hearing admitted that she would not be in a position to overrule a physician's orders.  Even if one assumes that Dr. Simmons believed tinted glasses were imperative, that suggestion was not

although Plaintiff has complained of difficulties in receiving the vitamins, he introduced no evidence to indicate that he has been harmed by the lack of vitamins, even if he were improperly denied the vitamins for a period of time.

10.     Referencing his amended complaint (docket entry #53) at the hearing, Plaintiff alleged that Anderson had seen him for his hernia in 2000, and ordered a truss, which resulted in pain, but no surgery.  Because of this treatment, Anderson was aware of Plaintiff's condition, and, according to Plaintiff, later became CMS medical director in Arkansas.  Plaintiff contends that Anderson's elevation to CMS medical director empowered him to order surgery for Plaintiff's hernia, as well as tinted glasses he alleges he needs.  Plaintiff has not, however, shown that Anderson was directly involved in his treatment after 2000, that he was even aware of his eye condition at all, or that he had any involvement or knowledge of Plaintiff's care during the three years prior to the date Plaintiff's complaint was filed.  As discussed above, claims prior to August 8, 2002, are barred by the statute of limitations.  Plaintiff's claims against Anderson after that date appear to be based on a *respondeat superior* theory, which is insufficient to impose § 1983 liability.  *See Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997)(no *respondeat superior* liability for § 1983 violations); *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)(prison officials and supervisors may incur liability only for their personal involvement in a constitutional violation or for corrective inaction that amounts to deliberate indifference or tacit authorization of unconstitutional practices).  Because neither is the case here, Plaintiff has not introduced sufficient facts to proceed to a jury with his claims against Anderson.

11.     Plaintiff contends that Diab refused to schedule him for surgery and denied him any

---

approved by Dr. Ifediora, the CMS physician.  Because Green was not in a position to overrule the physician, liability for the tinted glasses denial could not be placed upon her.

pain medication in January and February of 2005.  In his testimony regarding Diab, Plaintiff specifically referenced grievances MX-05-81 and MX-05-127.  However, a review of those grievances indicates that he was evaluated by Dr. Diab, who declined to order surgery.  Plaintiff later had the surgery, and testified that the timing of the surgery had no detrimental effect on his results. When a prisoner claims that a delay in receiving medical treatment amounts to inadequate medical care, he must allege (and eventually come forward with medical evidence verifying) a detrimental effect from the delay in medical treatment.  *Coleman v. Rahja*, 114 F.3d 778, 784 (8th Cir. 1997). Thus, it appears that Plaintiff merely disagreed with Diab's assessment at that time.  The Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation."  *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

12.     Plaintiff's allegations against Stell are that he filed several grievances, and that she failed to investigate them properly.  According to Plaintiff's testimony, Stell only told him the dates he was treated.  However, Stell is not a physician, and, as Plaintiff conceded, is not in a position to overrule the decisions made by the physicians.  There is no allegation that Stell personally intervened to block Plaintiff's receipt of medication, or any surgical recommendations.  Therefore, Plaintiff has not introduced sufficient facts to proceed to a jury with his claims against Stell.

13.     Similarly, Plaintiff's claims against Green appear to be primarily based on her refusal to see him on March 31, 2005.[3]  However, Plaintiff also admitted that Green's refusal to see him was because she did not want him walking and aggravating the hernia when no physician was at the infirmary, and she could not give him stronger pain medication than he already had.  As discussed

---

[3]In his testimony regarding Green, Plaintiff referenced grievance MX-05-81, in which he complained that he was scheduled to see a physician on December 28, 2004, but was not seen until January 10, 2005.  However, Plaintiff made no specific allegations against Green in that grievance.

earlier, Plaintiff agreed that the timing of his surgery had no negative effect on his outcome.  Plaintiff did not allege Green blocked any surgical procedure, or specific medications.   Green is not a physician, and the facts introduced are not sufficient for Plaintiff to proceed to a jury with his claims against her.

IT IS THEREFORE RECOMMENDED THAT Plaintiffs' complaint be DISMISSED WITH PREJUDICE for failure to introduce sufficient evidence to create a fact issue to be submitted to a jury.

DATED this  12   day of December, 2006.

_____

UNITED STATES MAGISTRATE JUDGE